H. M. Goodman, Administrator of Emma C. Goodman, Deceased, *v.* John P. Condo, H. H. Montgomery, Wm. Garis, John L. Dunlap, James Cornelly and Jos. Rightnour, Appellants.

*Powers of sheriff—Execution of process—Destruction of property.*

The law does not clothe the sheriff in the execution of any legal process with the discretionary power to take, use, appropriate, or destroy the property of third parties without liability to compensate the owners thereof.

*Public officers—Powers and limitations of sheriff—Arrest of criminals.*

The sheriff is armed with ample powers in aid of the arrest of offenders; he may break open doors in order to follow felons and if they are killed, provided they cannot be otherwise taken, it is justifiable. But where he incurs expense or inflicts damage for the purpose of aiding him in the performance of his duties he is liable personally unless the law has provided otherwise.

*Sheriff's liability—Destruction of property.*

A sheriff in aid of the arrest of a desperate criminal burned the house in which he had sought shelter. *Held,* in a suit against the sheriff by the owner of the house, that as the only purpose of destroying the house was to render more easy and less dangerous the arrest, and inasmuch as the element of necessity was lacking from the situation, the sheriff was personally liable for the damage to the house.

Argued Oct. 26, 1899. Appeal, No. 173, Oct. T., 1899, by defendants, from judgment of C. P. Centre Co., Aug. T., 1897, No. 219, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Trespass. Before LOVE, P. J.

It appears from the record that this action was brought by plaintiff to recover the value of a house and buildings destroyed by defendants, as sheriffs, while endeavoring to arrest one, William R. Etlinger, who was under indictment for assault and battery.

It appears from the evidence that a bench warrant was issued by the court of quarter sessions and sent to Constable Barner to bring Etlinger into court. Etlinger barred his house and refused to give himself up. The constable and his assistant broke in the door, entered the house after having first notified him of a warrant for his arrest; finding themselves confronted by a second door leading up a stairway which was also locked, the constable broke a panel out and started to crawl through. After the constable had passed through the hole in the door Etlinger fired upon him from the head of the staircase and shot him through the temple. His assistant immediately left and no further effort was at that time made to arrest Etlinger. The officer who was then assisting the constable at once notified the community of what had been done and that he believed the constable to have been killed. Several citizens then attempted to

arrest Etlinger a second time, and in going towards the house they were fired upon by him so that it was impossible to get near the place. Word was then sent to the sheriff of the county, John P. Condo, that Etlinger had killed Constable Barner and had barricaded himself in his house and was resisting arrest. The sheriff went there with a posse of men and placed a guard around the house to prevent Etlinger's escape. In the morning a party of deputies with the sheriff attempted to move upon the house occupied by Etlinger who fired again from the house. The shots passed close to some of the officers, some of them having been hit thereby. A promiscuous firing continued during the day and as the result of a discussion it was determined upon by the sheriff and his posse to set fire to the out buildings with the hope of driving Etlinger out. This plan was carried into execution by one of the sworn deputies of the sheriff. The house took fire from the out buildings whereupon the children and wife of Etlinger, who were in the house, came out and afterwards Etlinger himself. Shots were fired at Etlinger who then turned his revolver upon himself and shot himself. The body of Constable Barner was then recovered, he being found dead at the foot of the stairway with a wound in his head and with his throat cut from ear to ear. Immediately after the body of the constable had been removed discharges of dynamite were heard and in a very short time the entire building was exploded. It also appeared in evidence that the sheriff had been advised that Etlinger was provided with dynamite in the house. This suit was brought by the owner of the house occupied by Etlinger.

Plaintiff submitted among others certain points, as follows:

[1. That the law does not clothe a sheriff in the execution of any legal process with discretionary power to take, use, appropriate or destroy the property of third parties without liability to compensate the owners thereof. *Answer:* Affirmed.] [1]

[2. That while the circumstances and surroundings of the case at bar might relieve the defendants in a criminal action or for liability for punitive damages they do not relieve them from liability to the plaintiff for the injury done by them to her property. *Answer:* That point we affirm.] [2]

[4. That under all the evidence the verdict must be for the plaintiff for the amount of damages to be ascertained by the jury under the evidence and the charge of the court. *Answer:* Affirmed.] [3]

Defendants submitted certain points as follows:

[1. That under all the evidence in the case, the plaintiff cannot recover. *Answer:* The question of law raised by this point is reserved.] [4]

[2. That, if the jury find from the evidence that the sheriff was in Woodward on March 6, 1896, in the discharge of his official duty for the purpose of arresting a man charged with the commission of a grave crime, such as the killing of Constable Barner; that he had called upon the man to surrender himself; that he had endeavored to make the arrest with a posse of his deputies; that he had used every means to do so, even by exposing himself and his deputies to the fire of the criminal who was concealed in his house; that he had exhausted all means that could be resorted to, without necessarily endangering human life, and that the man was holding the entire party at bay, the sheriff was justified in burning the buildings for the purpose of driving the criminal therefrom and the plaintiff cannot recover. *Answer:* The question of law raised by this point is reserved.] [5]

[4. That the uncontradicted testimony of the witnesses for both plaintiff and defendant shows that the sheriff and his deputies had knowledge of the character of the crime which had been committed; that it was a felony; that he had further knowledge of the fact that the criminal had dynamite in his house and that it was endangering human life to attempt to enter the house to arrest the said criminal, and he was, therefore justified in firing the building for the purpose of arrest, and the plaintiff cannot recover. *Answer:* This point involves questions of fact to be determined by the jury and therefore cannot be affirmed.] [6]

The court submitted certain interrogatories to the jury which with their answers are as follows:

[1. Whether J. P. Condo, sheriff, was in Woodward on March 6, 1896, in the discharge of his official duty, for the purpose of arresting a man charged with and suspected of having committed a grave crime, such as the killing of Constable Barner, and that he had called upon the man so accused to surrender himself and that he refused; that he had endeavored to make the arrest with a posse of his deputies. Questions answered in the affirmative by the jury.

2. Whether the sheriff and his deputies had used every legitimate means to make the arrest, and had been exposed to the fire from a gun or deadly weapon of the supposed criminal, concealed in the house ;. that the sheriff had exhausted all means that could be resorted to, without unnecessarily endangering human life, and that the person sought to be arrested was holding the entire party at bay. *Answer :* We so find.

3. Whether the burning of the premises in question was, under all the evidence, necessary, in order to make the arrest of the accused person, William R. Etlinger. *Answer :* We do.

4. Whether, under the evidence, no other means could have been successfully resorted to, than the burning of the buildings to secure his arrest. *Answer :* No other means could have been resorted to.] [7]

The court directed verdict for plaintiff, and submitted to the jury the question of the value of the property destroyed, under the evidence, and reserved, as a question of law, the question as raised by the points of defendants, whether or not, under all the evidence, the plaintiff was entitled to recover.

Verdict and judgment in favor of plaintiff for $865. Defendants appealed.

*Errors assigned* among others were (1–3) affirming plaintiff's first, second and fourth points, reciting same. (4) In entering judgment against defendants, thus refusing his first point reserved at the trial, reciting same. (5) In entering judgment against defendants and thus refusing defendants' second point reserved at the trial, reciting same. (6) In entering judgment against defendants and thus refusing defendants' fourth point, reciting same. (7) In sustaining exceptions to the special verdict of the jury, reciting interrogatories of the court to the jury and their answers thereto. (8) In entering judgment in favor of plaintiff. (9) In not entering judgment in favor of defendants.

*J. M. Dale* and *J. C. Meyer*, with them *John G. Johnson*, for appellants.—It is not necessary to discuss in detail the various assignments of error. In the end the action of the court amounted to a direction to the jury to find a verdict in favor

of the plaintiff, and a refusal of the defendants to direct a verdict in his favor.

The sole question, therefore, is whether the sheriff under the conceded facts was responsible. If he was not, the defendants' point asking for the direction of a verdict in his favor should have been granted.

The jury were entitled to find facts. They found them in a way not in accordance with what the judge states in his opinion. It was not within the legal power of the learned judge to set aside this verdict and to enter judgment upon facts found by himself.

The facts were entirely justified by the evidence. Had they not been so justified, if there were any facts in doubt, the issue concerning them was not within the province of the court to determine.

We submit that under the facts of the case, and under the facts as found by the jury, the defendants were entitled to judgment.

The special verdict finds that in pursuance of his duty, performing the same in a reasonable, proper and necessary manner, the sheriff destroyed the property.

It would be most anomalous to hold personally responsible in damages a public official who has performed a public duty in a proper way.

Without bothering to look into the earlier books upon the subject, we find in 2 Bouvier (Rawle's Revision), 992, this definition:

"It is the sheriff's duty to preserve the peace within his bailiwick or county. To this end he is the first man within the county, and may apprehend and commit to prison all persons who break or attempt to break the peace, or may bind them over in a recognizance to keep the peace. He is bound, ex officio, to pursue and take all traitors, murderers, felons and rioters; has the safekeeping of the county jail and must defend it against rioters; and for this, as well as for any other purpose, in the execution of his duties, he may command the inhabitants of the county to assist him, which is called the posse comitatus:" Fields v. Stokley, 99 Pa. 306; American Print Works v. Lawrence, 21 N. J. L. 248; Meeker v. Van Rensselaer, 15 Wendell, 397; Semayne's Case, 1 Sm. L. C. 230; Bowditch v. Boston, 101 U. S. 16.

In these cases the common law adopts the principle of the natural law, and finds the right and the justification in the same imperative necessity: 1 Burlamaqui, 145, 179, sec. 24; Pufendorf, Bk. 2, c. 6.

Will it be in the interests of the community that sheriffs shall be told by learned courts that the proper method of pursuing their duty of arresting criminals will be to withdraw from the presence of the latter, and after quiet has been restored by giving the criminals a reasonable opportunity to escape, thereafter to attempt the arrest?

The case is put very mildly by this statement: In the case at bar the person sought to be arrested was supposed to have shot and killed Constable Barner who had broken into his house with intent to arrest him.

The supposition was a certainty. After properly endeavoring to serve his warrant the constable had been shot as he was attempting to arrest Etlinger. After being shot the throat of the constable had been cut. His dead body was lying in the house at the time Etlinger was firing upon the sheriff and his posse. The house itself was charged with dynamite.

The sheriff was clothed with the duty of arrest and of preservation of the public safety, and with the power to do whatever should be necessary to perform this duty in the only possible way in which it could have been performed. Neither the commonwealth which he represented, nor he, its representative, was responsible for damages resulting from the necessary performance of a necessary duty in preservation of the public peace and of life.

And we ask if, whilst shooting at a murderer flying from the officers of the law, after being properly summoned, the ball should injure the property behind which he was concealed, could the owner of such property recover damages?

*Ellis L. Orvis*, with him *Calvin M. Bower*, for appellee.— There is no pretense that Mrs. Goodman's house was in any sense, per se, a nuisance, or a menace to the community; if so, the chance flight of any fugitive from justice into the residence of any citizen would justify its destruction by the pursuing police. This thought has been elaborated upon quite largely by the learned judge below in his opinion, and will of itself cause

this court to hesitate to recognize so dangerous a power to be vested in the sheriff, constables and police.

There is prevalent an exaggerated idea of the powers vested in the sheriff. What the law does allow in the use of physical force is a very minimum by which the desired object can be obtained. Whatever a rash or overzealous officer may do in cases of this kind is without warrant of law : Murfree on Sheriffs, 74.

The sheriff has not the immunity which the law confers upon judicial officers. He must decide questions at his peril and promptly, and by his decisions incur dangers of loss: Murfree on Sheriffs, 465.

Where the sheriff hires at great expense armed military companies to aid him, he cannot claim to be repaid by the county for such expenses: Curtis v. The County of Allegheny, 1 Phila. 237.

The principle in Curtis v. Allegheny County was subsequently recognized in 1863 by the Supreme Court in Raush v. Ward, 44 Pa. 389.

We will comment but briefly upon the suggestion that the learned judge below was bound by the answers of the jury to the several interrogatories. Either the trial judge reserved the question of law properly or he did not. If he did not, then under the decision of the Supreme Court in Butts v. Armor, 164 Pa. 73, judgment perforce must be entered upon the verdict. But if the point was properly reserved the court below had full power to treat it in a judicial way. The verdict of the jury was for a fixed amount. The special findings of fact can be held in no other light but as a device resorted to by the judge to aid him in considering the evidence relative to the reserved question. So far as the verdict is concerned they were merely surplusage. As a matter of fact it is apparent the sheriff did not exhaust the means of arresting Etlinger. The slow but comparatively safe method of starving him out of the house was not attempted, although clearly open to him, and yet the appellants, within twelve hours of their arriving upon the ground, burnt a valuable building, in which four if not five human beings were stationed, three of whom were utterly innocent and helpless. Nor did the sheriff cause the crowd to withdraw so that the fugitive might be allowed to become calm and

understand that his immediate personal safety could be guaranteed should he deliver himself to the officers.   It cannot be argued for a moment under the facts in the case, that the sheriff even as a matter of policy was justified at so early an hour in resorting to the extreme and dangerous method of arson, thereby necessarily threatening lives of many persons before he had resorted to less tragic if more protracted measures.   ·

But whether or not the evidence submitted in this case does justify in the minds of this court the acts of the appellant here complained of, it will certainly not lead you to the revolutionary doctrine contended for by the appellants.   You will not lay down a new principle, that merely executive officers of the law may take or confiscate private property without liability for compensation and thereby create a precedent for the vesting in them of new and dangerous powers, the contemplation of which is alarming.

OPINION BY BEEBER, J., January 17, 1900 :

The constable and an assistant went to the house occupied by one, William R. Etlinger, his wife and two young children, for the purpose of arresting him upon a bench warrant.   After having informed him of their purpose to arrest him on a warrant they were refused admission, whereupon they broke down the outer door, entered the house, and found the entrance to the foot of the stairway leading to the second story, where Etlinger was, barred by a locked door.   The constable broke out a panel of this door and attempted to pass through.   Whilst doing so he was shot by Etlinger, who was standing at the top of the stairway.   The assistant immediately left the premises and notified the community of what had occurred, adding that he believed the constable had been killed.   Several citizens then proceeded towards the house for the purpose of arresting Etlinger, who fired upon them as they approached.   They then withdrew to a safe, distance, stationed men to guard the house so that he could not escape, and sent notice to the sheriff of what was occurring.   The latter started at once for the scene of action taking with him several deputies.   He arrived late in the evening and found that frequent shots had been exchanged between Etlinger in the house and the excited citizens outside during the afternoon.   This shooting continued after his arri-

val. He placed guards around the house, who watched during the night to prevent an escape. Next morning with a squad of men he marched towards the house with a view of making the arrest, when Etlinger fired upon them. They then withdrew. During the day he learned that Etlinger had threatened to kill any one who came to the house, that he had a considerable amount of dynamite in it and that he had said he would not be arrested. The sheriff succeeded in having an interview with Etlinger in which he asked him to give himself up and he promised to protect him from the excited citizens, but Etlinger refused to do so. After consultation with those around him the sheriff concluded that the only way to accomplish the arrest would be to burn the house and thus drive Etlinger out. This was done. The house belonged to the plaintiff, who brought suit against the sheriff to recover its value. A verdict was found in her favor. The question is whether an action will lie against the sheriff under these circumstances.

The sheriff contends that he is not liable because the destruction of the house was necessary to enable him to perform his public duty, to wit: to arrest the felon. Ground for this contention is sought in the principle that authorizes one, whether officer or not, to raze buildings to the ground to prevent the spreading of a conflagration, to appropriate exclusively a plank in a shipwreck at the expense of another's life, to throw overboard goods in a tempest for the safety of a vessel, or to trespass upon another's land to escape death from an enemy. This principle is well recognized in the cases, but its application is only allowed where the situation is such that absolute, imperative necessity requires the commission of the acts which cause the injury. Unless the dangers, against which the acts complained of are committed to protect one, are irresistible, overwhelming and avoidable in no other way, they do not justify the destruction of life or property because the essential element of necessity is lacking to the situation. If there be such a necessity the right to destroy exists and belongs to one as an individual in his natural state and not because he is a member of a civilized society. It is both above and beyond his rights derived from the social compact and it has no necessary connection with or dependence upon the sovereign power. It is based upon and derived from the natural right of self-

preservation and is superior to his rights or duties as a member of society. If one who exercises this right happens at the time to be an officer he hás no greater immunity from liability than a private individual would have doing the same thing under the same circumstances. Of course if he does the act as an officer in obedience to the mandate of the law requiring that particular thing to be done, then he is not exercising this natural right, except as it has been transformed into a statutory right, but is performing an official duty in the manner prescribed by the law, and is protected, because a public officer, acting in good faith, under the sanction of a constitutional or valid law, is not to be held liable for the necessary result of such an act: American Print Works v. Lawrence, 21 N. J. L. 248; s. c. 23 N. J. L. 590; Respublica v. Sparhawk, 1 Dall. 357.

The sheriff in this case does not rely upon any law which required this particular act, causing the damage, to be done, and prescribed the manner in which it should be done. He stands, therefore, just as any other resident of the village in which these occurrences happened would stand so far as any right to destroy property is concerned. It is true it was his official duty to arrest the felon, but so was it the duty, though not official, of the residents to do the same thing. To enable him to perform his duty he has been clothed with ample power, for the whole posse comitatus is at his command. He may break open doors in order to follow felons, and if they are killed, provided they cannot be otherwise taken, it is justifiable, though if they kill him whilst he is endeavoring to arrest them it is murder: Brook v. Com., 61 Pa. 352. The law, since it has thus invested him with such ample power, has not gone further and authorized him to destroy property when such destruction simply removes somewhat of the danger involved in the performance of his duty. The arrest of a felon is always attended with some danger, but this is an incident of the office of sheriff. Its extent is reduced to a minimum by the great power given to him, but it is obvious that it cannot be removed entirely. This burned house did not threaten the life of the sheriff. It was the desperate man within it. It is true the house furnished some measure of protection to the man within whilst accomplishing his lawless purpose, but its destruction can in no sense be said to have removed a danger which threat-

ened the sheriff's life.   So long as the lawless purpose existed so long was there danger to the sheriff.   It is evident, therefore, that the only purpose of destroying the house was to render the arrest less dangerous.   In this respect it was simply an aid to and in ease of the sheriff and upon principle must be paid for by him.   Where he incurs expense or inflicts damage for the purpose of aiding him in the performance of his duties he is liable personally unless the law has provided otherwise : Raush v. Ward, 44 Pa. 389.

Judgment affirmed.


PER CURIAM, January 17, 1900 :

The above opinion was written by Judge BEEBER during his term of office as a member of this Court, the case having been duly assigned to him for that purpose.   It is now adopted and filed as the opinion of the court.