# Commonwealth *v.* Micuso, Appellant.

*Criminal law—Murder—Voluntary manslaughter—Shooting by private citizen—Arrest of criminal.*

1. A private citizen may arrest for a felony, but neither he nor an officer may shoot the felon, either to kill or wound, unless it is necessary to prevent his escape.

*Criminal law—Murder—Homicide—Degrees of murder—Involuntary manslaughter—Charge.*

2. A judge is not required to charge upon questions not involved in the case.

3. Upon an indictment for murder there can be no conviction of involuntary manslaughter, and the trial judge is not required to give the jury a definition of that grade of homicide.

4. Involuntary manslaughter is committed where it appears that neither death nor any great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act not strictly lawful in itself, but done in an unlawful manner and without due caution.

5. When death results from unlawful violence, intended to disable but not to kill, it is felonious homicide, although not of the highest degree.

6. Where two join in the commission of an unjustifiable assault, which results fatally, both are guilty regardless of which one inflicted the mortal wound.

7. In such case the trial judge does not err in charging the jury that even if entirely satisfied the defendant did not fire the fatal shot, it would still be their duty to convict of some degree of crime, if satisfied that for the purpose of committing an unlawful assault, he was acting in concert with the person who fired the shot.

*Criminal law—Murder—Verdict—Jury.*

8. The verdict of a jury is what is announced in open court and recorded as such, not what is written and handed to the trial judge; and, until so announced and recorded, the jury may correct any mistake inadvertently made thereon, and the court may request them to retire for that purpose.

9. Where a jury comes in and hands up a written verdict of guilty of involuntary manslaughter upon an indictment under which no such conviction could be had, the court may instruct them that if they had mistakenly written "involuntary" for "voluntary" they could retire and correct it; and if they do so and return a verdict of voluntary manslaughter, such verdict may be recorded, and will be sustained.

Argued February 13, 1922. Appeal, No. 222, Jan. T., 1922, by defendant, from judgment of O. & T. Schuylkill Co., May T., 1920, No. 196, on verdict of guilty of voluntary manslaughter, in case of Commonwealth v. Rusario Micuso. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of voluntary manslaughter upon which sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*R. A. Freiler,* with him *A. D. Knittle,* for appellant, cited: Meyers v. Com., 83 Pa. 131; Com. v. Long, 17 Pa. Superior Ct. 641; Com. v. Grethers, 204 Pa. 205; Com. v. Smith, 221 Pa. 552.

*Cyrus M. Palmer,* District Attorney, with him *M. F. Duffy,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE WALLING, March 27, 1922:

On the afternoon of March 1, 1920, there was a shooting affair in Moff's saloon at Girardville, Schuylkill County, in which, among others, Mike Barilla, the bartender, and one Frank Machese participated, the former being wounded and the latter killed. Mickie Bronzo, the deceased, was present as a friend of Machese, but just what part he took in the shooting does not appear. Rusario Micuso, the defendant, was also present as the friend and cousin of Barilla, but it is not shown that he did any shooting in the saloon. Bronzo immediately left the place and ran down the street, followed by the defendant, who came up with a revolver and shot him in the back, and, according to the Commonwealth's evidence, fired at him again after he had fallen. The defendant, on his way back to the saloon, fired two random shots at Edward Krick, a friend of Bronzo's, as he was going from the place. Bronzo died in six days, and defendant's trial for his murder resulted in a conviction of voluntary manslaughter, and, from sentence thereon, he brings this appeal.

Defendant contends that, his cousin having been fatally shot as then supposed, he pursued Bronzo to arrest him as a participant therein, and fired only one shot and that at his legs, when the deceased unfortunately tripped and fell just in time to receive the bullet in his back. That a private citizen may arrest for a felony is undoubted, but neither he nor an officer may shoot the felon, either to kill or wound, unless it is necessary to prevent his escape. "To excuse the taking of life

in making an arrest it must appear that the killing was necessary to effect the object, and that the arrest could not have been made without it; or that the officer reasonably believed, and had grounds to believe, that it was necessary to effect his purpose. Even a felon cannot be killed in an effort to arrest him, without criminal responsibility, unless he cannot otherwise be captured": Wharton on Homicide (3d ed.) 746, section 498; 3 Cyc. 891; Brooks v. Com., 61 Pa. 352; Goodman v. Condo, 12 Pa. Superior Ct. 456. Here the defense fails, for the defendant was gaining rapidly upon Bronzo and could have caught him in a moment. It was daylight, the deceased was a resident there, was unarmed at the time, and defendant made no request upon any of the bystanders to assist in making the arrest. Furthermore, the defendant's conduct was inconsistent with such contention; for he did not arrest Bronzo, nor at first admit shooting him, but hid the revolver and denied he had been out of the saloon after the shooting therein and not until two months thereafter did he set up the claim that he was attempting to arrest the deceased.

Under the indictment for murder there could be no conviction of involuntary manslaughter and the trial judge was not required to give the jury a definition of that grade of homicide. In fact no request was made for such instruction, and, in any event, a judge is not required to charge upon questions not involved in the case: Com. v. Bednorciki, 264 Pa. 124; Brown v. Com., 76 Pa. 319; 16 C. J. 1024. There was no evidence, not even that of defendant, which would reduce the crime to involuntary manslaughter; for when death results from unlawful violence, intended to disable but not to kill, it is a felonious homicide, although not of the highest degree. Moreover, shooting with intent to wound is a wilful, not a negligent act, and, when resulting in death, rises higher than involuntary manslaughter. The latter offense is committed "where it plainly appears that neither death nor any great bodily harm was intended,

but death is accidentally caused by some unlawful act, or an act not strictly lawful in itself, but done in an unlawful manner and without due caution": Com. v. Gable, 7 S. & R. R. 422, 427. Death caused by recklessly driving a motor vehicle, or by carelessly discharging a firearm in a populous place, are examples of involuntary manslaughter; but to intentionally run down or shoot a citizen, causing his death, is a higher offense. We have considered the degree of the crime largely upon defendant's own testimony; it appears more serious when viewed in the light of the Commonwealth's convincing evidence.

The jury, after due deliberation, came in and handed up a written verdict of guilty of involuntary manslaughter; whereupon the trial judge informed them that under the indictment no conviction could be had for such offense, but said if they had mistakenly written "involuntary" for "voluntary" they could retire to correct it; this they did and rendered a verdict accordingly, which was properly recorded. The verdict is what is announced in open court and recorded as such; not what was written and handed to the trial judge; and, until so announced and recorded, the jury may correct any mistake inadvertently made therein, and the court may request them to retire for that purpose: Com. v. Nicely, 130 Pa. 261, 271; Wolfran v. Eyster, 7 Watts 38; see Com. v. Huston, 232 Pa. 209, s. c. 46 Pa. Superior Ct. 172.

Where two join in the commission of an unjustifiable assault, which results fatally, both are guilty regardless of which one inflicts the mortal wound; hence, the trial judge did not err in charging the jury, in effect, that even if entirely satisfied the defendant did not fire the fatal shot it would still be their duty to convict of some degree of crime, if satisfied that for the purpose of committing an unlawful assault he was acting in concert with the person who fired such shot. "Where two combine to commit a felony or make an assault, and in carry-

ing out the common purpose, another is killed, the one who enters into the combination but does not personally commit the wrongful act is equally responsible for the homicide with the one who directly causes it": 1 McClain on Criminal Law (ed. of 1897), p. 258, sec. 291. This instruction was called for by the fact that two bullets of different calibre were found in the body of Bronzo and it was not clear whether both were fired by the defendant or one by another acting with him.

The assignments of error are overruled and the judgment is affirmed.