Commonwealth v. Martin, Appellant.

Argued October 5, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Forest B. Irwin,* for appellant.

*Maurice P. Breene,* for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1936:

On Sunday, April 28, 1935, a fire destroyed the two story unoccupied frame dwelling house, situated on a plot of ground in Venango County, owned by H. Earl Hoffman and others, and known as the "Dog Hollow Lease." The fire occurred about 9:30 o'clock in the evening. An investigation by the state police resulted in the arrest of three persons living in the vicinity. They were Wilbur Martin, appellant herein, Perry Gilmore and Edward Lee Coast. The arrests of appellant and Gilmore followed the making of certain statements by Coast, subsequently reduced to writing and hereinafter considered.

We gather from the record that Martin, Gilmore and Coast were separately indicted under Section 1 of the Act of April 25, 1929, P. L. 767, 18 PS §3021, which provides, in substance, that any person who wilfully and maliciously burns, or causes to be burned, "or who aids, counsels, or procures the burning, of any dwelling house, etc.," shall be guilty of the felony of arson, and punished as therein provided. Each indictment con-

tained two counts—the first, charging the burning of the dwelling house in question, and the second, that the particular defendant named in the first count aided, counseled and procured the burning by the other two defendants. Referring to the indictment involved upon this appeal, Martin was charged in the first count with the burning of the house, and in the second with aiding, counseling and procuring its burning by Coast and Gilmore. The Commonwealth nol pros'd the indictment against Coast, but held him in custody as a material witness. The indictment against Gilmore at No. 4, August Sessions, 1935, of the Quarter Sessions, and the indictment against Martin, at No. 5 of that term and court, were consolidated for trial in the Oyer and Terminer, over the objections of the defendants. The verdict as recorded against each defendant read: "Not guilty of Arson, but guilty of counseling but not aiding and procuring." Each defendant, after the refusal of his motions in arrest of judgment and for a new trial, was sentenced to an imprisonment of not less than two nor more than four years in the penitentiary. Martin, alone, has appealed and the court below granted a supersedeas.

The first and third assignments raise one of the serious questions involved upon this appeal. They are based upon the admission in evidence of a certain typewritten statement containing four pages, signed and sworn to by Coast on May 2, 1935, and designated as "Commonwealth's Exhibit B." In general, this statement, made by Coast to police officers and the sheriff at the time of his arrest, implicated Gilmore and the appellant in the burning of the house for the purpose of preventing it from being occupied by a proposed tenant, Lawrence McLaughlin, with whom they were at enmity. The circumstances leading up to the admission in evidence of this statement were these. At the trial Coast was called and examined as the principal witness for

the Commonwealth. His testimony was to the effect that on the day preceding the fire while Gilmore and the witness were having their noon meal with the latter's grandmother, with whom they lived, a man named McLaughlin came and inquired for the key to the house. He told Coast he was moving in on Tuesday and asked the number of oil wells on the lease. Coast repeated this conversation to Gilmore who said the house should be burned down because people like the McLaughlins were undesirable in the neighborhood. Later that afternoon, Coast and Gilmore went to appellant's house where the conversation with McLaughlin was again discussed. Appellant said he would burn the house down and Gilmore suggested the use of waste soaked in oil and a candle. That evening Coast visited one Clarence Hoffman and left for his grandmother's home about 9:30 or 10:00 o'clock. The road led past the Dog Hollow Lease house. When he had gone half way to that point, he noticed the house was in flames and, leaving the road, walked through the fields in order to avoid passing the house for fear the fire would be blamed on him. When Coast reached home Gilmore was in bed and Coast related on the stand the following conversation with Gilmore: "I said 'Did you see the fire, Perry?' He said, 'Yes.' He said, 'Wilbur Martin ought to have waited around midnight before he set it afire so everybody would have been in bed.'" Coast also testified that he and Gilmore met appellant the following morning, when "Perry Gilmore said to Wilbur Martin, 'What did you burn that place for?' He said he didn't, someone beat him to it, and he just grinned."

As there were no discrepancies between the testimony of Coast as delivered from the witness stand and the contents of his prior signed statement (Com.'s Ex. B) there was no valid reason, at that stage of the trial, for any reference whatever by the representative of

the Commonwealth to the statement. The district attorney, however, produced it, directed Coast to examine it, and had him admit he had signed and sworn to it before a magistrate.

Gilmore and appellant were represented by the same attorney. When Coast was turned over to him for cross-examination, he produced another and contradictory statement purporting to have been signed by Coast and also by Gilmore in the presence of the attorney and two other witnesses. It was also dated May 2, 1935, and in it Coast and Gilmore declared that to the best of their knowledge appellant had nothing to do with the burning of the house, nor did he advise them to burn it. This statement was marked "Defendants' Exhibit No. 1." Coast admitted he had signed the paper while confined in the county jail, but asserted from the stand that he did not know what he was signing and denied positively that its contents were true.

After a detailed cross-examination of Coast upon the facts to which he had testified in chief, appellant's counsel handed him the statement produced by the Commonwealth (Com.'s Ex. B) and asked him whether he had read that paper before he signed it. When the witness replied in the affirmative, counsel directed him to read aloud the opening paragraph—apparently for the purpose of testing his ability to read. In the concluding part of his cross-examination, Coast declared he had not told counsel for appellant the truth at their interview in the jail, but that his testimony as given in court was the truth.

Upon redirect examination, Coast was asked some additional questions relative to the preparation and execution of "Commonwealth's Exhibit B."

Counsel for appellant then asked Coast whether he understood that statement when it was read to him in the office of the district attorney, to which the witness replied he not only understood it when it was read to him but had since read it himself.

Over the objection of counsel for appellant, the district attorney was then permitted to read the statement to the witness paragraph by paragraph and have him state at the conclusion of each that he had made the several statements and that they were true. At the conclusion of the reading, appellant's counsel moved to strike out all the matter read into the record by the district attorney from the statement upon the ground that it was incompetent, irrelevant and immaterial; the motion was overruled and an exception granted appellant.

By the next witness, a state policeman, the district attorney was permitted to show that Gilmore had also signed a written statement which corroborated the testimony of Coast. This statement, containing three pages, was marked "Commonwealth's Exhibit A." In this statement Gilmore implicated appellant and admitted that he (Gilmore) had suggested the use of a candle.

At the conclusion of the oral testimony for the Commonwealth, the district attorney offered in evidence Exhibits "A" and "B". Counsel for appellant objected vigorously but the trial judge admitted both papers without any limitation. The second assignment of error is based upon the admission of Exhibit "A". Appellant's Exhibit "No. 1" was offered in evidence by him and admitted.

When testifying in his own behalf, appellant denied having had any conversation with Coast or Gilmore concerning the burning of the house or any connection in any way with the fire. Gilmore denied any such conversation with Coast or appellant and averred that his statement to the officers had been extorted from him by threats of bodily harm.

Considering first the admissibility of Gilmore's statement to the police officers, it is obvious, under the most elemental principles, that it was admissible against him alone. The trial judge having consolidated the indict-

ments against appellant and Gilmore for trial over their objections, it became his clear duty to protect each of them in the enjoyment of his rights as fully and completely as if each had been upon trial by himself. The admission of Gilmore's statement as against appellant was a clear violation of the latter's right to meet his accusers face to face and cross examine them. Neither at the time of its admission nor at any place in the charge was the jury instructed to consider the statement as evidence only against Gilmore. There was no excuse for the admission of this statement as against appellant. In fact, the evidence discloses that when appellant was confronted, during the police investigation, with Gilmore and charged by him with having planned the method of committing the crime, appellant replied to Gilmore, "You are a liar, I didn't say it."

In the recent case of *Com. v. Sendrow,* 119 Pa. Superior Ct. 603, 181 A. 450, three men, Nalbone, Fischer and Sendrow had been separately indicted for larceny and receiving stolen goods. At the trial of Sendrow, the other two testified as witnesses for the Commonwealth, as did Coast in the present case, and the trial judge also admitted written confessions previously made by them to the police in which Sendrow was accused. In reversing, KELLER, P. J. said: "(1) Nalbone and Fischer, were not on trial. They had pleaded guilty to the indictments against them. They testified as witnesses for the Commonwealth in the trial of Sendrow, and their evidence, together with the competent evidence of the police officers,—some incompetent evidence was also given by the police—was sufficient to take the case to the jury. But the district attorney offered, and the court admitted, in evidence against Sendrow the written statements or confessions which Nalbone and Fischer had made to the police. They were not admissible against this appellant for any purpose; and no one else was being tried. They were, as against this appellant,

the veriest hearsay: *Com. v. Epps,* 298 Pa. 377, 380, 148 A. 523. They could not be used to corroborate or strengthen the evidence given in court, of the men who made them, testifying as witnesses on behalf of the Commonwealth. The case differs from *Com. v. Smith,* 105 Pa. Superior Ct. 497, 501, 161 A. 418, in that in that case, Fischer, who made the confession, in the presence of the defendant, did not testify in court; and from *Com. v. Ballon,* 229 Pa. 323, 327, 78 A. 831, and *Com. v. Carelli,* 281 Pa. 602, 606, 127 A. 305, for the additional reason that in those cases the confession implicating the defendant had been read to him and, at least tacitly, assented to by him. ......

"But the written statements or confessions made by Nalbone and Fischer had no place in the case on trial and should *not have been received in evidence, or read to the jury.*" (Italics supplied)

It is equally clear that the prior statement of Coast, (Com.'s Ex. B), as offered and received, was not admissible either against appellant or Gilmore. As was said in the Sendrow case, that statement as against either appellant or Gilmore was "the veriest hearsay."

It may also be noted in passing, although not material, that the indictment against Coast was nol pros'd probably because under the facts related by him in his statement to the police officers and testified to by him in court, he was not an accomplice in the commission of the crime. The most that can be said of him, under those facts, is that he heard appellant and Gilmore plan the burning.

For the reasons stated, it is our duty to sustain the first, second and third assignments of error.

In addition, however, a reading of the charge discloses a serious and fundamental error in connection with the treatment therein by the trial judge of the separate statements of Gilmore and Coast, Exhibits "A" and "B", admitted at the instance of the Common-

wealth, and their joint statement, Exhibit "1", offered by counsel for appellant. Although not specifically assigned, the error is of such a nature that we may not ignore it.

After directing attention to the fact that these detailed statements had been signed and sworn to, at the instance of officers of the Commonwealth, the trial judge proceeded: "These have been offered in evidence and are for your consideration. They are in the nature of *a confession of guilt on the part of Mr. Martin and Mr. Gilmore."* (Italics supplied)

As to appellant, this was a plain and most prejudicial misconception by the trial judge of the contents and effects of the papers to which the attention of the jury was thus directed. The only statements contained in those papers were made by Coast and Gilmore. So far as the record discloses, appellant from the beginning of the investigation by the state police to the close of the trial never made any statement which could possibly be construed as, or even distorted into, a confession.

The remaining assignments are based upon the refusal of appellant's points requesting the direction of a verdict in his favor. We think they were properly refused; the most to which appellant is entitled is a new trial.

As the case must be retried, attention should be directed to several other matters. The instruction with respect to the two counts in the indictment was not as clear as it might have been. The manifest purpose of the pleader in drafting the second was to provide for the contingency which might arise if the Commonwealth's proofs failed to show the defendant was the actual perpetrator of the act, or present aiding and abetting its commission, but did show that, although absent at the time the crime was committed, he had counseled or procured another to commit it. The verdict as written by the foreman upon the verdict slip

read: "1. Not guilty of arson. 2. Guilty of counseling but not aiding and procuring."

It therefore seems that the jury intended to acquit appellant upon the first count and convict him upon the second, and the verdict should have been so moulded. See *Com. v. Miller and Burke,* 77 Pa. Superior Ct. 469; *Com. v. Huston,* 46 Pa. Superior Ct. 172; *Com. v. Hartley,* 89 Pa. Superior Ct. 230; *Com. v. Micuso,* 273 Pa. 474, 117 A. 211.

In order to avoid any misunderstanding with respect to the scope of our ruling that it was error to admit Coast's written statement, (Com.'s Ex. B) in the manner and for the purpose it was offered in this case, it may be proper to say that under certain circumstances such a statement may be admissible for a limited purpose.

When the testimony of a witness has been impeached by proof of a conflicting statement, or by a suggestion that his testimony is a recent fabrication, the party offering the witness may be permitted to support his credibility by proof of prior statements consonant with his testimony. The sole purpose of such evidence is to sustain the credibility of the witness; the prior statement cannot be received as direct or corroborative evidence of the facts stated upon the stand by the witness. The authorities on this point are reviewed in *Crooks v. Bunn,* 136 Pa. 368, 20 A. 529, and *Lyke v. Lehigh Valley R. R. Co.,* 236 Pa. 38, 84 A. 595. In the latter case it was shown that the limited effect of the prior statement must be explained to the jury. Mr. Justice MOSCHZISKER there stated the rule as follows: (p. 51) "It is not usually permissible to support the credibility of a witness by evidence that he had made a former statement similar to his testimony in the case on trial, and the best considered authorities hold that evidence of this character should not be allowed except in rare instances where the credibility of a witness is impeached

in such a manner and to such an extent that the trial judge feels convinced that the witness is entitled to the support. Where this is so, and proper instructions are given to the jury concerning the real purpose and value of the testimony, no harm is likely to follow. In the present case instructions were given in such plain terms that the jury must have understood that the office of the testimony was simply to support the credibility of the plaintiff, and that, if believed, it was not to be taken as evidence, either direct or corroborative, of the facts contended for by him"; This case has been followed in *Com. v. Ruff,* 92 Pa. Superior Ct. 530, 533; and *Foelner v. Sulkin,* 61 Pa. Superior Ct. 621, 624. See also *Com. v. Derembeis,* 120 Pa. Superior Ct. 158, 169, 170, 182 A. 85.

As already indicated, the first, second and third assignments are sustained and the others overruled.

The judgment against appellant is reversed with a venire.