Commonwealth *v.* Powell, Appellant.

Argued January 10, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Rodger L. Mutzel,* with him *Kassab, Cherry, Curran & Archbold,* for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, *William R. Toal, Jr.,* First Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 15, 1968:

This is an appeal from the Judgment of Sentence entered on a conviction of voluntary manslaughter after a jury trial which lasted two days. The crime for which defendant was convicted occurred on July 10, 1965. Defendant was arrested on August 20, 1966, and pleaded not guilty to the indictments charging him with the murder, voluntary manslaughter, and involuntary manslaughter of Dicky Willmore.

The most important contention made by defendant in this appeal is that the trial Judge abused his discretion in refusing to grant defendant's motion for sequestration of three out of the four Commonwealth witnesses. We note at the outset that two of the witnesses whom defendant requested to be sequestered had testified at a preliminary hearing, as well as at a habeas corpus hearing. The notes of both hearings were available to defendant and his counsel at trial. The

third witness was not present in Court at the time defendant's motion for sequestration was made, nor was he present during the testimony of the other witnesses. Sequestration was granted by the Court as to the fourth witness, who nevertheless refused to testify at the trial.

In *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861, in discussing the question of sequestration, we said (pages 217-218) : "In nearly every criminal and civil case, one side or the other would like to have some or all of the witnesses of his opponent sequestered. The lack of adequate room space, the long delays which would inevitably be caused by sequestration and other practical considerations, make sequestration of witnesses ordinarily impractical or inadvisable, except in unusual circumstances.*  For the foregoing reasons the question of sequestration of witnesses is left largely to the discretion of the trial Judge and his decision thereon will be reversed only for a clear abuse of discretion."

Moreover, the record indicates that the proposed witnesses to be sequestered did not "mold" or "shape" their testimony to coincide with that of the witness preceding them, nor indeed was there, as defendant contends, repetitive or harmonious testimony elicited from the various witnesses.  There is not the slightest merit in appellant's contention of an abuse of discretion on the part of the trial Judge in refusing to allow the sequestration of the aforesaid witnesses.

Appellant next contends that the trial Judge in his charge to the jury committed reversible error when he commented on the fact that defendant was a fugitive from justice, and that the jury could infer guilt from this fact.  Defendant argues that the statement was

---

"* A request for sequestration of a witness or witnesses should be specific and should be supported by some reason or reasons demonstrating that the interests of justice require it."

prejudicial and reversible because the jury could take it to mean that the Judge was expressing his own opinion as to defendant's guilt. While we do not agree with defendant's interpretation of this charge, we once again call to the attention of the Bar and the trial Courts that the trial Judges have the right and power to comment on the guilt of the defendant so long as the jury is clearly told that the opinion of the trial Judge was not binding upon it, and that the Court left that determination entirely to the jury. *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150; *Commonwealth v. Cisneros,* 381 Pa. 447, 113 A. 2d 293; *Commonwealth v. Lance,* 381 Pa. 293, 113 A. 2d 290.

We have considered all of the remaining contentions of the defendant and find them to be totally without any merit.

Judgment of sentence affirmed.

Mr. Justice COHEN concurs in the result.

DISSENTING OPINION BY MR. JUSTICE JONES:

I dissent on the ground that when the trial court, in its instructions to the jury commented upon the fact that Powell had been a fugitive from justice and stated that the jury could infer guilt from such fact, such comment and statement constituted reversible error. I believe such comment falls within the proscription of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), as to the introduction into evidence of tacit admissions. See: *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 85, 223 A. 2d 296 (1966).

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

While I can agree with the majority that in context the trial court's charge was not a comment upon the guilt of the accused, I must again note my disagreement with the proposition that a trial judge may

comment upon the guilt of an accused. See *Commonwealth ex rel. Smith v. Rundle,* 423 Pa. 93, 99-100, 223 A. 2d 88, 91 (1966) (dissenting opinion). Furthermore, in an area of the law that can be properly classified as evolving,* the majority studiously ignores an important caveat to the judicial privilege of comment upon guilt. "While it is difficult to define with any degree of specificity when such an opinion as here under discussion should not be expressed, it can be definitely stated that such *should not be done in a very close case." Commonwealth v. Ott,* 417 Pa. 269, 273, 207 A. 2d 874, 877 (1965). (Emphasis added.)

I must dissent, however, on an issue not discussed in the majority opinion. The appellant contends that it was error for the trial judge to remove from the range of verdicts the jury might return the verdict of involuntary manslaughter. We have recently held that a defendant is entitled to a charge on voluntary manslaughter where there is *some* evidence which could support such a verdict. *Commonwealth v. Pavillard,* 421 Pa. 571, 576, 220 A. 2d 807, 810 (1966). I believe that a like rule should apply to the question of whether defendant was entitled to an involuntary manslaughter instruction when indicted and tried for such a charge.

Appellant here contended that the killing was a result of his efforts to defend himself. He stated that he was accosted by six or seven men who attempted to rob him and that, while in flight, he turned and fired several shots into the group. Involuntary manslaugh-

---

* Compare *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963), cert. denied, 377 U.S. 999, 84 S. Ct. 1930 (1964) and *Commonwealth v. Moyer,* 357 Pa. 181, 53 A. 2d 736 (1947) with *Commonwealth v. Lucier,* 424 Pa. 47, 225 A. 2d 890 (1967), *Commonwealth v. Young,* 418 Pa. 359, 211 A. 2d 440 (1965) and *Commonwealth v. Ott,* 417 Pa. 269, 207 A. 2d 874 (1965).

ter consists, inter alia, of the doing of an act not strict-
ly unlawful in itself but which is done in an unlawful
manner and without due caution. See *Commonwealth
v. Aurick,* 342 Pa. 282, 288, 19 A. 2d 920, 923 (1941).
In fact, the reckless discharge of a gun into a crowd
is a classic example of involuntary manslaughter. See
*Commonwealth v. Micuso,* 273 Pa. 474, 478, 117 Atl.
211, 213 (1922). The jury could have concluded that
at the time appellant fired he was no longer in danger
of his life and that his act was therefore reckless. I
thus conclude that there was some evidence of involun-
tary manslaughter and that it was error to take this
offense from the jury.

The Commonwealth argues that involuntary man-
slaughter, a misdemeanor, is not a permissible verdict
under a murder indictment and that further it is im-
proper to include both murder and involuntary man-
slaughter in the same indictment. See *Commonwealth
v. Palermo,* 368 Pa. 28, 81 A. 2d 540 (1951). I disagree,
for Pa. R. Crim. P. 219(a) (effective January 1, 1965)
clearly allows joinder of a count of involuntary man-
slaughter in a murder indictment; in any event, I fail
to see the relevancy of this argument. Appellant was
indicted and brought to trial on two indictments—one
for murder and one for involuntary manslaughter. Un-
der these circumstances, I believe that if there is evi-
dence to support an involuntary manslaughter verdict,
an accused is entitled to an instruction.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opin-
ion.

