**UNITED STATES of America ex rel. Frank POWELL**

v.

**COMMONWEALTH OF PENNSYLVANIA.**

Misc. No. 4112.

United States District Court
E. D. Pennsylvania.

Dec. 30, 1968.

Frank Powell, pro se.

Stephen J. McEwen, Jr., Dist. Atty. of Delaware County, by Vram Nedurian, Jr., Asst. Dist. Atty., Media, Pa., for defendant.

## OPINION

JOHN W. LORD, Jr., District Judge.

Relator, currently serving a term of five to ten years' imprisonment upon a conviction for voluntary manslaughter has petitioned this Court for a writ of habeas corpus. He alleges

(1) he was deprived of his constitutional right of due process of law due to an alleged prejudicial statement made by the trial judge during the course of his jury trial; and

(2) he was deprived of due process by the failure of the trial judge to submit

a charge to the jury on a possible verdict of involuntary manslaughter.

## I. Prejudicial Statement of the Trial Judge.

According to his own testimony at trial, relator was fleeing from a group of attackers when he turned and fired several shots from a revolver he was carrying. One of his pursuers fell dead, struck by one of the bullets. Continuing his flight relator met friends and was subsequently transported to New Jersey where he remained for thirteen months. Upon his return to Pennsylvania he was arrested for the shooting.

During the course of his trial, the judge gave instructions to the jury which included a charge that guilt may be inferred from the flight and subsequent concealment of the accused. This, relator claims, was so prejudicial and a gross trial error as to amount to a denial of due process of law.

■ Federal habeas corpus relief will only be granted to correct state trial errors which so violate fundamental fairness as to amount to a denial of due process of law under the Fourteenth Amendment. United States ex rel. Cannon v. Maroney, 373 F.2d 908 (3rd Cir. 1967).

■ An allegation of impropriety in the charge to the jury entitles a state prisoner to federal habeas corpus relief only where it is shown that it constituted fundamental error resulting in a deprivation of due process. United States ex rel. Chase v. Rundle, 266 F.Supp. 487 (M.D.Pa.1967).

■ An examination of the charge to the jury does not convince this Court that fundamental error has been committed here. The disputed charge was as follows:

"Then the Commonwealth explains to you that this Defendant left the jurisdiction and the Commonwealth contends to you if this man, this Defendant, were assaulted and robbed; was beaten; his life was in danger; would it be a natural thing to do to use a certain language 'panic'—yes, I think that was the language—would he have panicked to such a degree that he went to Second Street and got into a car and the people took him to a place which you will recall. They took him somewhere else and then he went from one place to another for a period of 13 months. Now, the Commonwealth says to you that is something for you to consider because the law recognizes and the Commonwealth says, take into consideration the matter of flight, why does a man run if he has been so unjustifiably assaulted and robbed and threatened. Our Appellate Courts have said this to be the law, that when a crime has been committed and the person accused thereof, knows he is accused, and then flees or conceals himself, such conduct is evidence of consciousness of guilt and in connection with other proof may be the basis from which guilt may be inferred. That is a principle of law which has been decided by our Appellate Courts and the Commonwealth asks you to take that into consideration in determining the guilt or innocence of this Defendant. There is a proverb which I am sure you are all familiar, 'The wicked flee when no man pursueth but the righteous are bold as a lion.' I think there is one of the proverbs which, no doubt, you are all familiar and it is a principle which has been enunciated by our Appellate Courts and they recognize the question as to why a man would run and conceal himself for 13 months, since, in his own testimony, that he learned four days afterwards that a human life had been taken. They are facts for your consideration and, Members of the Jury, we are leaving it to you to give such weight as to this testimony as the Commonwealth told you to give. He says he panicked. If you believe he panicked; if you believe that panic or fear was such that it was his motivation for being away for 13 months.

The Commonwealth says to you that there may have been some inconsistencies in the testimony because there was a lapse of 13 months and the best of witnesses can forget things that happen 13 months ago if there was no immediate recording of them, but the inconsistencies, Members of the Jury, are entirely for you. The Court is trying to review this testimony right down the line so you will have presented a fairly and impartially viewpoint of the Commonwealth and the Defendant."

Relator finds no fault with the *language* of the charge, rather he challenges the propriety of a trial judge's charge to the jury concerning an inference of guilt from a fugitive's flight from justice. He argues that permitting a jury to infer guilt from an accused's flight and concealment, is akin to permitting a jury to infer guilt from the silence of the accused. Relator likens this situation to the one that exists with "tacit admissions". Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), is cited for the proposition that a man's right to remain silent cannot be abridged by a prosecutor's comment on his failure to testify in his own behalf. There the prosecutor's comment and the court's acquiescence constituted a solemnization of the silence of the accused; a clear abridgement of his right against self-incrimination. In another "silence case", United States ex rel. Staino v. Brierly, 269 F. Supp. 753 (E.D.Pa.1967), this Court held that remaining mute in the face of an accusation of crime naturally calling for a denial cannot constitute a tacit admission of guilt.

In both of the above cases the situations went to the heart of the self-incrimination clause of the Fifth Amendment—the right to remain silent. The issues were clear-cut. Could one's *silence* incriminate him?

Such is not the case here. We are not concerned with relator's silence. We are concerned with his flight and concealment. There is no constitutional right to flee justice.

Relator would further have us hold that permitting such an inference to be drawn from flight makes it incumbent upon the accused to relinquish his right to remain silent to explain away the inference. However, if this were the case, it would also follow that the Commonwealth should not be permitted to present its case against a defendant, for in many instances a defendant may find it necessary to break his silence to rebut this evidence produced against him. In short, the fact that something is brought out at trial which the defendant feels is necessary to answer, does not violate his right against self-incrimination.

## II. Failure to Submit a Charge on Involuntary Manslaughter to the Jury.

Pennsylvania law provides that a defendant is entitled to a charge on voluntary manslaughter where there is *some* evidence which would support such a verdict. Commonwealth v. Pavillard, 421 Pa. 571, 220 A.2d 807 (1966). It would seem only reasonable that a like rule should apply to an instruction in involuntary manslaughter especially when the accused is originally indicted for the same. See Commonwealth v. Powell, 429 Pa. 1, 239 A.2d 368 (1968) (dissenting opinion, Mr. Justice Roberts). Furthermore, failure to so charge would constitute fundamental error requiring federal habeas corpus relief. It was thereby incumbent upon this Court to read the record of relator's trial to determine whether there was "some evidence" to support a possible verdict of involuntary manslaughter. After a reading of notes of testimony of the trial, with particular emphasis on the direct examination of the relator, it is the conclusion of this Court that there was no evidence warranting a charge to the jury on the law on involuntary manslaughter.

Relator testified that he was accosted by seven men who attempted to rob him; that he was stabbed in the leg; but was able to make his escape. While in flight from the group of men who were now pursuing him, he turned and fired one shot in the air. Seeing that this had no effect on the pursuers, he turned again and fired four shots in their direction.

■ Involuntary manslaughter is committed where it plainly appears that neither death nor any great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act not strictly unlawful in itself, but done in an unlawful manner and without due caution. Commonwealth v. Micuso, 273 Pa. 474, 117 A. 211 (1922). This case further held that carelessly discharging a firearm in a populous place is a classic example of the offense. A picture comes to mind of the western cowboy of last century riding into town after a long cattle drive. His pockets full of money, he notifies the saloonkeepers of his arrival by noisily firing his six-guns into the air. One errant bullet finds its deadly mark in the heart of one of the townsfolk. Such is the crime of involuntary manslaughter. But when a man, fleeing from a crowd, fires a shot in the air and sees it go to no avail in halting the pursuit, fires now in the direction of the crowd, such discharge cannot be held to be a mere "careless discharge of a firearm in a populous place". It does not plainly appear that neither death or great bodily harm was intended by the action. It is the conclusion of this Court that in view of relator's own testimony there was insufficient, if any, evidence of involuntary manslaughter to submit a charge to the jury on that offense.

And now, to wit, this 30th day of December, A. D. 1968, it is hereby ordered that relator's petition for a writ of habeas corpus be and the same is hereby denied.

A certificate of probable cause to appeal is granted.

And it is so ordered.