442 A.2d 813

COMMONWEALTH of Pennsylvania,

v.

Victor BRACERO, Appellant.

COMMONWEALTH of Pennsylvania,

v.

Maximo BRACERO, Appellant.

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed March 12, 1982.

Petition for Allowance of Appeal Denied June 18, 1982.

370

Joel M. Breitstein, Lebanon, for appellant (at No. 973).

Keith L. Kilgore, Lebanon, for appellant (at No. 1020).

William L. Thurston, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

WATKINS, Judge:

These cases come to us on appeals from the Court of Common Pleas of Lebanon County and involve the defendants' appeals from judgments of sentence entered after they were convicted by a jury of aggravated assault, criminal attempt to commit murder and conspiracy. The defendants were each sentenced to terms of imprisonment from two and one-half years less one day to five years less one day. They were also fined $100, assessed costs of $22.50 and ordered to make restitution to the victim in the amount of $5948.70 apiece.

Defendants argue that the evidence was insufficient to support the jury's verdicts against them. We disagree. About three weeks prior to November 12, 1977 a young woman, Kathy Demmy, told the victim, Richard Meade, that Victor Bracero had hit her. Meade confronted Victor Bracero over the alleged incident, a fight ensued, and Victor Bracero and some friends of his administered a severe beating to Meade. Victor Bracero was criminally charged by the police over this incident which occurred at Pusnik's Bar in Lebanon, Pennsylvania.

On November 12, 1977, at Pushnik's Bar, Meade and a friend, Marcell Green, were present at midnight when Maximo Bracero challenged Green to go outside with him. Green began to walk towards the door, accepting the challenge.

Maximo Bracero walked backwards toward the door waving Green on. Meade and Hayes followed Green outside and Meade warned Green about going with Maximo Bracero. Once outside of Pushnik's, Green saw Victor Bracero and attempted to run back inside. At that point Meade observed Victor Bracero running towards him with a shotgun. Meade turned and ran but before he could flee Victor Bracero shot him in the shoulder with a 12 gauge shotgun.

At trial, Meade, Green and a friend of theirs, Robert Hayes testified as to the above. Another witness, a college student named Joseph Oxley, testified that as he and his girlfriend were entering the bar they had observed a man of Spanish descent with an Afro haircut carrying a gun and saying "I'm going to blow your fuckin' head off". Oxley was told to duck and "get out of here". After the incident he observed two Spanish men run from the area towards the road.

Expert witnesses identified the shell fragments in Meade's back as those from a 12 gauge shotgun. Defendants were brothers of Spanish descent. Meade, Green and Hayes were black and not of Spanish origin.

■ Defendants claim that because there was "bad blood" between the witnesses and them and because defendants presented their brother, Alfredo, as an alibi witness who testified that Victor Bracero was at home asleep at the time that the evidence is insufficient to support the verdict or, in the alternative, is against the weight of the evidence. This was a jury question. Taken in the light most favorable to the verdict winner the above facts are sufficient to sustain the verdicts. *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976).

■ Defendants also contend that the court erred in admitting the evidence of Victor Bracero's prior criminal arrests as a result of the earlier incident. We do not agree. This evidence tended to establish motive and was admissible for that purpose. *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Schwartz*, 445 Pa.

515, 285 A.2d 154 (1971); *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973).

■ Defendants also complain because the court below turned over a list of Commonwealth witnesses to defense counsel but ordered defense counsel not to turn the names over to defendants. However, at the preliminary hearing the defendants were informed of the names of Meade, Green and Hayes. The Commonwealth offered to prove that in the past defendants had threatened Commonwealth witnesses which hindered their prosecution. The court properly exercised its discretion pursuant to *Pa.R.Crim.Pro. 305(B)* in ordering the Commonwealth to turn over the names to defendants' counsels but in also ordering the counsel not to provide defendants with the names.

■ Next, defendants argue that *Rule 231 of the Pa.Rules of Crim.Pro.* was violated by the Commonwealth because defendants fled after their arrest but prior to their preliminary hearings and the Commonwealth then filed informations against them prior to the preliminary hearings. They filed motions to quash the informations. *Pa.Rules Crim.Pro. 231* grants the court the discretion to permit the Commonwealth to file criminal informations against the defendants who "cannot be found in the Commonwealth" prior to their preliminary hearings. In this case the defendants had fled from Pennsylvania prior to their preliminary hearings. The Commonwealth then filed the informations without first making the proper certificates. However, defendants were eventually taken into custody and both were given preliminary hearings. The court then permitted the Commonwealth to file new criminal informations "nunc pro tunc" and denied defendants' motions to quash. Because defendants were not prejudiced in any way by this procedure and because they had fled after their arrests we hold that the court below did not abuse its discretion in dismissing their motions to quash.

■ Defendants claims that the court erred in refusing to sequester the jury prior to voir dire. Defendants' counsel

wanted the jurors sequestered so that he could ask whether any had prejudices against people of Spanish descent. The court refused seeing no good reason to grant the request as very few people will admit any such prejudice and because this practice substantially delays the functioning of the judicial process. This is a matter of discretion with the trial court. It did not abuse its discretion in this instance. The voir dire was conducted fairly.

■ Defendant Maximo Bracero claims that he is entitled to a new trial because the name of a Commonwealth witness, Patrick Kelliher, was not turned over to him prior to trial. The court had ordered that names of "eyewitnesses" to the event be turned over to defendants' counsel. Kelliher was not an "eyewitness" to the shooting but merely testified that he had seen both defendants together on the evening in question. Kelliher was made available to counsel of defendant prior to his testimony, his testimony was therefore known by counsel prior to his giving it, counsel failed to move for a continuance at the time it learned of his identity, and defendants were not prejudiced by this anyhow as his total contribution to the case was slight. No reversible error occurred here as in their discovery motion defendants asked the names of "eyewitnesses" to the shooting incident and the names were provided to their attorneys.

■ The defendant, Victor Bracero, claims error in that the court below failed to suppress the testimony of Joseph Oxley. Oxley's name had been provided to defendant's counsel as an "eyewitness". Defendant, Victor Bracero, claims that Oxley was subject to a prejudicial "photographic" identification by the police. However, Oxley did not identify Victor Bracero at trial as the man who shot Meade on November 12, 1977 (or the early hours of November 13, 1977). He merely testified that he had seen a man of "Spanish descent" prior to the incident who was brandishing a gun and who told Oxley to get out. His description of the person he saw fit Victor Bracero but he didn't identify him as the person. His testimony, although relevant, was not influenced by any "photographic display" whether proper or

not. The court below correctly admitted his testimony for its limited purpose.

■ Defendants claim that a mistrial should have been granted because the Commonwealth violated a court directive ordering a sequestration of the remaining Commonwealth witnesses. The Commonwealth's first three witnesses were a doctor, a nurse, and a ballistics expert. The case was then adjourned until the following day. Defendants' counsel requested the Commonwealth to make the remainder of its witnesses available to them. While defense counsel were interviewing some of the witnesses, the Assistant District Attorney discussed the case with the remainder of the witnesses. The testimony of the first three witnesses was not discussed and they were not present. This fact was brought to the court's attention the next morning. It found no material violation of its sequestration order. The court found no violation of the purpose of sequestration, namely; to prevent witnesses from shaping their testimony to fit same plan "not riveted to the standards of truth". No attempt to conform the witnesses' testimony to that already given was made here. Sequestration is a matter of discretion with the trial judge. *Commonwealth v. Powell*, 429 Pa. 1, 239 A.2d 368 (1968). The selection of a remedy for the violation of a sequestration order is also within the sound discretion of the trial judge. *Commonwealth v. Martin*, 440 Pa. 150, 269 A.2d 722 (1970). In exercising its discretion the trial court must take into account the seriousness of the transgression, its impact upon the witnesses, and its probable impact on the outcome of the trial. *Commonwealth v. Smith*, 464 Pa. 314, 346 A.2d 757 (1975). Under the above circumstances the violation of the order, if a violation occurred at all, had little or no impact on the witnesses nor on the trial and was not serious. The court below acted properly and did not abuse its discretion in refusing defendants' requests for a mistrial on these grounds.

■ Finally, the defendants argue that the court erred in its charge to the jury by misquoting testimony, by failing to talk about the cross-examination testimony of Patrick Kelliher, by failing to point out conflicts in Marcel Green's

testimony; by failing to point out defendants' denial of conspiracy, and by giving undue weight to the prosecution. A review of the charge reveals that the trial court spent extensive time recounting the defendants' versions of the entire situation. It also informed the jury that all of the testimony was important and that it was up to the jury to decide the facts of the case and that it (the court) may not remember everything and just because it had not referred to testimony didn't mean that it wasn't important. Viewed as a whole, as we must, the court's charge to the jury was fair and proper.

Judgment of sentences affirmed.