Commonwealth *v.* Palermo, Appellant.

Argued May 21, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Thompson Bradshaw*, with him *Oran W. Panner, James B. Ceris, Ruggero J. Aldisert* and *Bradshaw & Panner*, for appellant.

*J. Wilmer Martin*, First Assistant District Attorney, with him *William Coghlan*, District Attorney, for appellee.

OPINION BY MR. JUSTICE LADNER, June 27, 1951:

On July 15, 1950, Camille Colodanato died as a result of gunshot wounds inflicted by the defendant, Joseph Palermo, who was his brother-in-law. Defendant was charged with murder, voluntary manslaughter and involuntary manslaughter. The jury returned a verdict of guilty of voluntary manslaughter. Motions in arrest of judgment and for a new trial were denied by the court below and defendant was sentenced four to twelve years in the Western State Penitentiary. Defendant appeals.

The first contention of the appellant is that the evidence produced by the Commonwealth does not support

a conviction of voluntary manslaughter. Saturday morning, July 15, 1950, the defendant went ground-hog hunting. He armed himself with a shot gun and a revolver. When he returned in the afternoon he sat on the front porch of his home, situate on Beaver Road, Monaca, Beaver County. The home of the deceased Camille Colodanato, who was married to the defendant's sister Virginia, was across the street. Between five and six o'clock in the afternoon defendant was sitting on the porch eating his supper when his sister was heard crying in her home on the opposite side of Beaver Road. The defendant threw his dishes out in the front yard, went inside his house, came out and went over to the Colodanato home. Various witnesses for the Commonwealth testified that they heard the sounds of fighting in the Colodanato home and about ten minutes later a shot.

Defendant came out of the Colodanato house and said, "I know I will get the electric chair for this but, by God, he had it coming to him." The police arrived on the scene shortly thereafter and the defendant came to the police car, placed his revolver on the seat and said, "I shot a man, Chief, there is the gun." Later on the way to the office of the magistrate the defendant said, "I didn't mean to, but I shot him like a dog." The Commonwealth also produced evidence that during the altercation in the Colodanato home the firing pin of the revolver struck one cartridge which was not discharged before it fired the fatal bullet.

It is true that defendant and his witnesses testified in such a manner that the jury could have found that the killing was in self-defense or accidental during the fight which occurred. However, the jury refused to accept this version of the incident and it cannot therefore be taken into consideration here.

"Voluntary manslaughter is a homicide intentionally committed under the influence of passion." *Common-*

*wealth v. Colandro,* 231 Pa. 343, 350, 80 A. 571 (1911) ; *Commonwealth v. Cargill,* 357 Pa. 510, 513, 55 A. 2d 373 (1947). The evidence produced by the Commonwealth, although circumstantial, was sufficient to allow the jury reasonably to infer a crime which falls within the definition of voluntary manslaughter. The jury could well have found that the defendant hearing his sister crying, went into his house and obtained his revolver. Further, the evidence supports inferences that the defendant went across the street and seeing his sister in tears became so incensed that he shot Camille Colodanato *intentionally* but in the heat of passion. The acts of the defendant before the shooting and the statements which he made after it occurred lend considerable credence to the plausible and reasonable conclusion reached by the jury.

The second argument of the *defendant* is that the trial judge should *not* have granted the *request of the defendant's counsel* which asked that the judge withdraw from the consideration of the jury the charge of involuntary manslaughter. The trial judge in his opinion states, "Counsel were advised by the court, before argument, that the charge of involuntary manslaughter would not be submitted to the jury." Counsel for the defendant in addition to requesting the trial judge to so act, took no exception to the charge when it complied with his request. Under the circumstances there is no ground for complaint, even assuming that there was evidence of involuntary manslaughter (a question which we rule it is unnecessary to decide.)

At the argument the question was raised as to the propriety of an indictment for murder and voluntary manslaughter including or charging also *involuntary* manslaughter. While in the view we have taken it is, in this case, no longer a matter of moment, we feel it well to observe that such practice is not proper. It is still the law since *Commonwealth v. Gable,* 7 S. & R.

423 (1821) that except as modified by statute, involuntary manslaughter which is a misdemeanor cannot be charged in an indictment with murder which is a felony. *Hilands v. Commonwealth,* 114 Pa. 372, 6 A. 267 (1886) ; *Walters v. Commonwealth,* 44 Pa. 135 (1862). Though it is true that the Act of June 24, 1939, P.L. 872, Sec. 703, 18 P.S. 4703, permits the district attorney to charge both voluntary and involuntary manslaughter in the same indictment, this language, which is similar to that contained in the former Act of 1794, (3 Sm. L. 188), and Act of 1860 (Act of March 31, 1860, P.L. 382, Section 79), has been construed in the cases above cited as not authorizing the inclusion of involuntary manslaughter with murder in the same indictment.

The third and final argument of the defendant is that the trial judge erred in permitting the district attorney to refuse to call the only eye witness to the shooting. This witness was Virginia Colodanato, the sister of the defendant and the wife of the deceased. The district attorney advised defendant's counsel that he was not going to call this witness and that she was available in the court room, whereupon the defendant called her and the jury passed upon her testimony which was extremely favorable to the defendant.

It is a settled principle of law that the Commonwealth must try a case fairly and that the district attorney is not a "vindictive seeker for vengeance." *Commonwealth v. Karamarkovic,* 218 Pa. 405, 408, 67 A. 650 (1907). However, it is equally well established that the district attorney is not obliged to call all of the eye witnesses, "nor a particular eye witness where he has reason to believe that the witness is unreliable." *Commonwealth v. Thurman,* 167 Pa. Superior Ct. 642, 647, 76 A. 2d 483 (1950). The calling of witnesses is within the discretion of the district attorney under the general supervision of the trial judge: *Commonwealth v. Karamarkovic,* supra; *Commonwealth v. Deitrick,*

221 Pa. 7, 14-15, 70 A. 275 (1908) ; *Commonwealth v. Giacobbe,* 341 Pa. 187, 196, 19 A. 2d 71 (1941) where Justice STERN said, "Although the district attorney is a quasi-judicial officer and as such should be motivated by a desire to accomplish justice rather than by an inordinate zeal to obtain convictions, much must be left to his discretion, under the general direction of the trial judge, in regard to the calling of witnesses for the Commonwealth."

In view of the relationship between the witness and the defendant the district attorney probably concluded that her testimony would be unreliable. The jury had her testimony before them when they made their decision and we therefore hold that the lower court did not err in its ruling in this regard.

Judgment affirmed.